People v Peyrefitte (2024 NY Slip Op 51583(U))

[*1]

People v Peyrefitte

2024 NY Slip Op 51583(U)

Decided on November 19, 2024

Supreme Court, Bronx County

Stone, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 19, 2024
Supreme Court, Bronx County

The People of the State of New York

against
Aaron Peyrefitte, Defendant.

Ind. No. 849-13

ADA Beth Kublin and ADA Meredith Holtzman, Office of the Bronx County District Attorney, for the People.
Hannah Gladstein, Esq, The Legal Aid Society, for the Defendant.

Audrey E. Stone, J.

This proceeding began with the filing of a pro se motion by the defendant seeking youthful offender adjudication for three offenses under CPL § 720.20(5). The Court assigned the Legal Aid Society to represent the defendant. Through counsel, the defendant filed for additional relief pursuant to CPL § 440.20(1). For the reasons set forth below, the Court denies both forms of relief.
Background
The charges here arose from criminal conduct that occurred when the defendant was between the ages of 17 and 19. At age 17, the defendant was indicted for first degree robbery (Penal Law § 160.15[4]) under Bronx County Indictment 1447-10; criminal sale of a controlled substance in the third degree (Penal Law § 220.39[1]) under Bronx County Indictment 2258-10; and murder in the second degree (Penal Law § 125.25[1]) under Bronx County Indictment 423-11, based on his having shot and killed another teenager in his neighborhood. While detained pre-trial on these charges, at age 19, he was arrested in connection with an assault at Rikers Island and charged with assault in the first degree (Penal Law §120.10[1]) under Bronx County Indictment 849-13.
On July 17, 2013, the defendant appeared before the Honorable Patricia DiMango. He was then represented by Anthony Strazza, Esq. During the appearance, ADA Frankel, who was prosecuting the defendant's four indictments, stated that, while the People had been offering a plea of 22 years to life on the murder indictment, the People were now offering a plea of 22 years on the lesser count of manslaughter in the first degree. The People attributed this change to Mr. Strazza's "strenuous advocacy." Mr. Strazza indicated that, after speaking with the defendant, his mother, grandmother, and family during the morning, he had hoped that the People would extend an offer of 20 years. The People indicated that they would not go below 22 [*2]years and Justice DiMango indicated that she would not accept a plea to 20 years. When explaining her view, Justice DiMango noted that the defendant faced consecutive sentencing on the four indictments. There was no disposition and so Justice DiMango adjourned the case for hearings and trial to commence before the Honorable Martin Marcus,
On July 22, 2013, the defendant appeared before Justice Marcus with Mr. Strazza. As hearings were due to proceed, ADA Frankel made a record that, while the People's offer had been 22 years to cover all four indictments, it would now be withdrawn due its rejection by the defendant. Mr. Strazza asked to approach the bench, and following an off-the-record conference, the defendant was able to avail himself of the global disposition. As a result, the defendant resolved the four indictments by pleading guilty to manslaughter in the first degree with a sentence of 22 years in prison followed by five years of post-release supervision, robbery in the first degree with a sentence of 10 years followed by five years of post-release supervision, criminal sale of a controlled substance in the third degree with a sentence of two years followed by two years of post-release supervision, and assault in the first degree with a sentence of five years followed by five years of post-release supervision. The People agreed that the four sentences would run concurrently for an aggregate prison sentence of 22 years. Because the defendant had been out on bail at the time of the homicide, Justice Marcus made a record explaining why he found it legally proper to run the sentence on the manslaughter conviction concurrently (see Penal Law § 70.25[2-b]). In that regard, Justice Marcus stated that Mr. Strazza had made him aware that, the defendant shot the teenaged decedent because he believed that, if he did not, the decedent would eventually kill the defendant's younger brother. In connection with the plea, the defendant waived his right to appeal.
Between plea and sentence, the defendant moved pro se to vacate his pleas. He argued that the sentence imposed was excessive and that Justice Marcus had failed to exercise his discretion with respect to the sentence. The defendant also alleged that his pleas resulted from an "ad hoc sidebar . . . in which my attorney compelled me to accept such plea." On August 6, 2013, the case appeared for sentencing and Mr. Strazza raised the issue of the defendant's motion to withdraw his plea. The defendant had also stated in his probation interview that Mr. Strazza compelled him to plead guilty. When Justice Marcus inquired about this allegation, the defendant asserted that Mr. Strazza had stated that the defendant had five minutes to decide about the 22-year offer. Justice Marcus noted that the defendant's matters had been pending for two and one-half years which had allowed him considerable time to decide whether to accept a plea or proceed to trial. While Justice Marcus expressed skepticism on the validity of the defendant's motion, he ultimately relieved Mr. Strazza and appointed Bruce Klein, Esq. to represent the defendant. As the appearance completed, Justice Marcus noted that he would need to hear "something far more convincing," to consider granting plea withdrawal. Justice Marcus further stated, "What I hear you say now is I changed my mind. That's not good enough."
On October 11, 2013, Mr. Klein appeared before Justice Marcus with the defendant. Mr. Klein explained that, while in his legal opinion the plea was proper, he was prepared to adopt the plea withdrawal motion as Mr. Peyreffite wished. Following oral argument, Justice Marcus confirmed that in his view "twenty-two years [wa]s not a bad deal . . . and that's why I accepted the plea." He noted that the defendant faced four indictments, including a charge of murder in the second degree, which was pleaded down to manslaughter, thus eliminating a life sentence. He also noted that the sentences were neither unduly harsh nor excessive. Seeing no legal basis for plea withdrawal, Justice Marcus denied the motion.
The matter proceeded to sentencing. The People asked to speak and reiterated that the lowest offer the People had been willing to make was to 22 years. The People again noted that this was their offer despite Mr. Strazza having "zealously advocated" for sentences of 20 and 21 years. ADA Frankel also noted that, from her conversations with Mr. Strazza, she believed that he and the defendant had conferred for some time about the offer. 
In imposing sentence, Justice Marcus complied with the requirement that he consider a youthful offender adjudication for the three offenses occurring when the defendant was 17 (see People v Peyrefitte, 210 AD3d 438, 438 [1st Dept 2022], lv denied 40 NY3d 952 [2023]). Justice Marcus found such treatment inappropriate, stating, "given the seriousness of the conduct, the multiplicity of the crimes, a youthful offender sentence was out of the question, and I am prepared to impose the sentence that was promised." While the defendant's waiver of right to appeal precluded many of his claims on appeal, the First Department noted in dicta both that Justice Marcus had not improvidently exercised his discretion in denying youthful offender status, and that the First Department would not itself have granted a youthful offender adjudication or reduced the defendant's sentence (Peyrefitte, 210 AD3d at 439). 
Ineffective Assistance of Counsel
The defendant argues that he was denied effective representation during the plea bargaining and sentencing processes and that he should be re-sentenced under CPL § 440.20(1). This argument focuses on the alleged failure of counsel to fully investigate and advocate for leniency based on significant mitigation. In support of this application, the defense sets out a thorough recitation of the defendant's background, his psychological state at the time of his offenses, and the impact of his trauma on his criminal conduct. The submission includes letters and affidavits by family members, friends, and experts. Based on counsel's purported ineffective representation, the defense requests that the Court vacate the defendant's sentence pursuant to CPL § 440.20 and order a de novo sentencing proceeding. The defense does not request vacatur of the defendant's convictions under CPL § 440.10(h) based on deficient plea negotiations. Rather, the defense argues that the Court should vacate the defendant's negotiated sentences on his pleas to manslaughter in the first degree, robbery in the first degree, criminal sale of a controlled substance in the third degree, and assault in the first degree, and consider de novo the defendant's sentences on these same charges arising out of four indictments.
The defense couches its application through a procedural lens that would not return the defendant to his pre-plea posture where he faced four separate indictments. Despite challenging the adequacy of the negotiations that led to the global 22-year disposition offered and accepted by the defendant, the defense brings the motion before the Court under CPL § 440.20(1), and requests as a remedy only a de novo sentencing. "[D]eprivations [of the right to the effective assistance of counsel] are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests (United States v Morrison, 449 US 361, 364 [1981]; see also People v Peters, 157 AD3d 79, 85 [1st Dept 2017], lv denied 30 NY3d 1118 [2018] ["courts have granted remedies uniquely tailored to dissipating the taint of counsel's ineffective assistance"]). An appropriate remedy for alleged ineffectiveness provides redress without "grant[ing] a windfall to the defendant or needlessly squander[ing] the considerable resources the State properly invested in the criminal prosecution" (Lafler v Cooper, 566 US 156, 170 [2012]). Its purpose must be to "as much as possible restore[] the defendant to the circumstances that would have existed had there been no constitutional error" (United States v Carmichael, 216 F3d 224, 227 [2d Cir [*3]2000]).
Here, the defense does not request that the defendant be restored to the circumstances that existed prior to his plea; rather, the relief sought would allow him a sudden advantage. The bargain required the People to extend a plea-down from murder in the second degree to manslaughter in the first degree. That plea-down is significant, since it lifted the defendant out of the murder charge's indeterminate life sentencing scheme (see Penal Law § 70.70[2][a], [3][a][i]). Murder is also an offense for which a youthful offender adjudication is not possible (see CPL § 720.10[2][a]). Additionally, the homicide occurred after the defendant was at liberty on, inter alia, a pending violent felony charge of robbery in the first degree. In order to avoid a consecutive sentence on the manslaughter charge to which the defendant pleaded and run the sentence concurrent to the other indictments, Penal Law § 70.25(2-b) required the Court to find in the interests of justice mitigating circumstances. The Court agreed to the proposed disposition and sentenced the defendant to the negotiated sentences to run concurrently. All of these factors indicate how the imposed sentence resulted from a carefully negotiated plea that involved both parties and the Court. 
CPL Art. 440 draws a distinction between claims that go to the judgement and those that go to the sentence itself. The defense asks the Court to side-step these distinctions between CPL § 440.20 and CPL § 440.10(h). By permitting vacatur of a judgment because it was obtained in violation of a defendant's state and federal constitutional rights, CPL § 440.10(1)(h) is broad and inclusive, necessarily encompassing a judgment interwoven with deficient plea negotiation and advocacy by counsel. Whereas, under CPL § 440.20, a defendant may move to "set aside a sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law." The statute is narrower by design. Constitutional claims raisable under CPL § 440.20 are those that go directly to the legality of the sentence itself. For example, the statute has been recognized as a vehicle for asserting that counsel was ineffective by failing to challenge the defendant's predicate status (see, e.g. People v Agard, 127 AD3d 602 [1st Dept 2015]). Eighth Amendment claims that have been raised under CPL § 440.20 also go directly to the sentence imposed itself (see, e.g. People v Matias, 205 AD3d 557, 557-58, lv denied, 38 NY3d 1152 [2022]). 
A remedy in the negotiation context must relate to the challenged ineffectiveness. The resulting plea and sentence resulted from a compromise that encompassed the competing interests of the defendant, prosecution, and court. A criminal defendant is entitled to effective representation during the plea-bargaining process (see, e.g. Lafler, 566 US at 162; Missouri v Frye, 566 US 134, 140 [2012]; Hill v Lockhart, 474 US 52, 57 [1985]; People v McDonald, 1 NY3d 109, 113 [2003]). At the same time, the prosecution is not required to offer a particular plea (Frye, 566 US at 148; Weatherford v Bursey, 429 US 545, 561 [1977]; People v Antonio, 176 AD2d 528, 529 [1st Dept 1991], lv denied 79 NY2d 824 [1991]). Ultimately, the Court maintains discretion and is not required to accept a plea presented by the government and defense (Frye, 566 US at 148; People v Smith, 272 AD2d 679, 682 [3d Dept 2000], lv denied 95 NY2 938 [2000]). The remedy sought by the defense pre-supposes that only the sentence would have been altered had the defendant received more effective representation. This argument ignores the competing policies that led the People to extend a plea and sentence that the Court found acceptable. 
The errors asserted by the defendant as to his attorneys at plea and sentence each raise issues inextricably interwoven with plea vacatur. In the case of Mr. Strazza, 440 counsel argues [*4]that his alleged ineffectiveness tainted the negotiation process. With Mr. Klein, 440 counsel argues that he should have provided further mitigation in support of a youthful offender adjudication or more effectively argued for defendant's motion to withdraw his plea. Justice Marcus made it clear that the negotiated sentences and pleas on four separate indictments had required the Court's approval. The Court followed the law and made an individualized determination that based upon the number of crimes and their seriousness "a youthful offender sentence was out of the question." The People were similarly firm at sentencing that, despite zealous advocacy by Mr. Strazza, the People were not inclined to offer anything less than 22 years. The People's opposition includes an affirmation from the prosecuting attorney, Ms. Frankel, who having reviewed the present defense motion, does not believe that the additional details of the defendant's background "would have had an impact on the disposition of Mr. Peyrefitte's cases at the time." Here, the Court is confronted with what is really a failure to negotiate claim, not a failure to conduct an appropriate mitigation investigation at a plenary sentencing proceeding. The sought after remedy focusing solely on sentence seeks to foreclose the People from their role in the plea process (see People v. Farrar, 52 NY2d 302 [1981]). Under Farrar, when a sentencing court departs below a sentenced negotiated and agreed to by the People, the People retain the right to withdraw their consent to the negotiated plea (52 NY2d at 307-08.).
The defense cites to a recent decision arising out of the Eastern District of New York (see Chambers v Lilly, No. 1:22-CV-4368 [NRM] [LB], 2024 WL 2816145 [ED NY June 3, 2024]) in support of its argument. In Chambers, the District Court vacated a sentence on ineffective assistance grounds concluding that the Second Department had unreasonably applied Strickland v Washington. There, the defendant's attorney procured an agreed-upon sentence from the trial judge in exchange for his young client's plea to the top count of the indictment, albeit without conducting any background or mitigation investigation. The federal court concluded, inter alia, that no fair-minded jurist could find this to be effective sentencing advocacy (Chambers, 2024 WL 2816415 at *35). Unlike the matter at hand, Chambers involved a plea from the Court. Since Chambers involved a plea from the Court, it implicated neither the discordance with Farrar just described, or the government's role and participation in plea bargaining. The Chambers court acknowledged the distinction between the taint injected into a conviction by deficient plea bargaining and the taint injected into a sentence itself by deficient sentencing advocacy. 
The defense additionally points to an unpublished decision from Bronx County, People v Jimmy Delgado (Bronx County Ind. No. 56-2011 [Sup Ct, Bx Co March 18, 2019] [Greenberg, J.], where the Honorable Ethan Greenberg granted a CPL § 440.20 motion on state constitutional grounds. In Delgado, Justice Greenberg concluded that the defendant was deprived of meaningful representation where counsel did nothing to advocate for his client at sentencing following a trial conviction. Delgado involved pure sentencing advocacy after a conviction at trial. Thus, it, too, raises no issue of irreconcilability with Farrar, nor does it implicate the government's consent and participation in a negotiated plea agreement. The remedy granted by Justice Greenberg, a sentencing hearing with new counsel, was appropriately tailored to the harm suffered at the posttrial sentencing proceeding.
Youthful Offender
The defendant initially brought this action seeking youthful offender adjudication for three offenses under CPL § 720.20(5)(a). In weighing the factors favoring adjudication the [*5]Court finds that the defendant provides significant compelling bases for the Court to consider. At the time of the alleged offenses the defendant was a young person who lacked stability and experienced overwhelming trauma. He had little parental support either emotionally or financially. His two brothers died prematurely. Unquestionably, he lacked the capacity to fully appreciate the long-term consequences of his behavior. As is true for many youths his criminal conduct could be viewed as impulsive. While the People point to the defendant's many disciplinary infractions during his incarceration, over time the defendant has demonstrated personal growth and maturity. He has thrown himself into his education and begun in earnest to plan for a productive future. Already having achieved excellence in his studies, he plans to seek even further higher education when he re-enters society. His own pro se papers submitted with this application demonstrated to the Court a respect for legal processes and excellent skills in writing, research and analysis. The defendant also has a large community of friends and family prepared to assist him in his re-entry. While these resources may have been lacking at the time of the crimes he committed, the defendant clearly nurtured these relationships in the following years. It is noteworthy that since his sentence, the defendant has no additional criminal convictions. 
The procedure set out in CPL § 720.20 allows defendants two separate and distinct opportunities for a youthful offender adjudication. At the time of an original sentence a court must order a pre-sentence investigation and determine if the eligible youth should be adjudicated as a youthful offender (CPL § 720.20[1]). Where a court determines that the eligible youth is a youthful offender "the court must direct that the conviction be deemed vacated and replaced by a youthful offender; and the court must sentence the defendant pursuant to section 60.02 of the penal law" (CPL § 720.20[3]). Where the Court does not adjudicate the youth eligible at sentencing "the court must order the accusatory instrument unsealed and continue the action to judgment pursuant to the ordinary rules of criminal procedure" (CPL § 720.20[4]). Finally, where an eligible youth did not receive youthful offender treatment at sentence, that individual retains the right to reapply to the sentencing court for a new determination (CPL § 720.20[5][a]). This provision is available when "at least five years have passed since the imposition of sentence, or, if the individual was sentenced to a period of incarceration . . . the individual's latest release from incarceration" (CPL § 720.20[5][a]).
The defense argues that under this provision "A person may apply five years after their sentence. Or if a person was sentenced to a term of incarceration, they may choose to apply five years after their release" (defense motion p. 93). If the Court were to accept this reading of the statute, the latter provision would be superfluous. There is no case law precedent to support the defense position. In denying retroactive youthful offender adjudication to a defendant fifteen years after his release from custody, a Queens County Supreme Court reviewed the statutory requirements. The Court stated that the statute allowed for relief where "at least five years have passed" since the defendant's "latest release from incarceration" (People v Adel N., 75 Misc 3d 1228[A], * 2 [Sup Ct, Qns Co 2022]). Both the New York State Defenders Association and Office of the New York State Attorney General websites concur with this provision (see New York State Defenders Association, Juvenile Defense, Recent Youth Justice Legislation, https://www.nysda.org/page/JuvenileDefense [last accessed, November 15, 2024]; The Office of the New York State AttorneyGeneral,SealingYourCriminalRecord,YouthfulOffenders; https://ag.ny.gov/resources/individuals/civil-rights/sealing-your-criminal-record [last accessed, November 15, 2024]). 
In sum, the Court lacks authority to grant youthful offender relief at this time. Given the defendant's laudable efforts at self-improvement, the Court notes that relief remains an option available to the defendant once five years have passed from his latest release from incarceration. 
For the foregoing reasons, the Court denies the motion under C.P.L. § 440.20(1) without a hearing (see CPL § 440.30[4][a]) and further the motion pursuant to CPL § 720.20(5) without prejudice.
This constitutes the decision and order of the Court.
Dated: November 19, 2024
Bronx, New York
Audrey E. Stone, A.J.S.C.